Good morning, Your Honor. My name is Alan Yee. I represent the appellant Arlene, Jr. I think this case really focuses on a very important case on how to apply the US Supreme Court's holdings in McDonnell Douglas and more recently in Reeves v. Sanderson Plumbing and how to, one, determine employment discrimination when employment discrimination involves mainly indirect evidence and, two, how evidence should be considered in a summary judgment motion. Does this case involve a summary judgment motion and how the evidence should be evaluated by the court in a summary judgment motion. Here we have the appellant Arlene, Jr., who was the CEO of Sonoma County Superior Court for over five years. She was considered an exemplary employee. Two presiding judges who supervised her for more than four years said that she was professionally exemplary and an honest person and they definitely would not have terminated her in this case. Unfortunately, there was a situation that led to her termination. She had a subordinate, Margaret Smith, who was basically insubordinate. She refused to follow Ms. Jr.'s directions, Ms. Jr. being a black lady, and Ms. Smith would not basically agree to be supervised by a black lady. So Ms. Jr.'s did consult it with the presiding judge and an attorney for the Sonoma Superior Court. Counsel, it seems to me that a key about this case is the reasons that were given for the termination and whether those were a pretext or not. So I have a couple of questions on that issue in particular. First of all, the decision-maker for that determination decision, was that the presiding judge at the time, which I think was Judge Averell, or was that the executive committee of the court? It was the presiding judge at the time, Ms. Averell. It was the executive committee who were consulted, but many of the judges on the executive committee didn't even read the investigating reports. So it seems the record indicates that Judge Averell had the ability to unilaterally make the decision, but that she presented the issue to the executive committee and there was a vote on that. Am I wrong about that? That's correct. So then what do we do with that? Your position is that because she had the unilateral authority to make the decision, we just disregard what happened with the executive committee and that she chose to present it to them? Well, it should be considered, but we should also consider all the evidence of pretext that was presented by Ms. Jr. in this case, because that goes to the heart of how the procedure set up in McDonald, Douglas, and Reeves is used to determine whether there was discrimination. And what do you consider the best evidence of pretext here? Well, okay, there were two issues. One, there was a claim that she mismanaged the subordinate Margaret Smith. One, both of those issues that she was alleged of doing were based on the advice of the Superior Court's attorney that told her that, look, she should meet with the subordinate and discuss ways of amicable separation. And in the second case, where there was a discussion regarding the merit pay raise, the email that was sent to the employee was actually written by the Superior Court attorney and not by Ms. Jr. So that shows that was for her to be then punished for that when she was simply following orders of the... Reasons for the termination, apparently, there were four. Right. And the first one was that she was using abrasive, sort of hostile language, screaming, I think, at the employees. And there was an investigation done by an outside firm, a guy firm, and they basically made that finding. So that's one of the basis that Judge Averill relied on. Is that not correct? That's not exactly correct. Tell me, tell me what's... The investigation investigated that, but then found that there wasn't sufficient evidence for that finding. No, it found that, I thought it said it didn't find that there was abusive, right, but they did find that there was conduct that Judge Averill and the, I guess, the executive committee later found was in violation of the Code of Conduct for employees. So I'm trying to figure out why was, what's the pretext surrounding that basis for termination, because there were four, basically. So number one is I the investigation report found that wasn't an abusive behavior. Number two, the other two reasons that was given was regarding misrepresentations made to Judge Averill by Ms. Junior. And in both of those cases, there was evidence that that was misrepresentations were just not true. And then, in addition to all of that, we have evidence of favoritism by a Judge Averill toward Margaret Smith, the complaining employee, where she allowed Margaret Smith to bypass the then-presiding judge, Judge DeMallo, and and made the complaints to her instead of to the presiding judge. Well, but didn't Judge Averill then go to the presiding judge and say, hey, they brought it to me, but it needs to go to you? Didn't she do that? No, she took care of it herself, and so. Well, I thought that she brought it to the attention of the then-presiding judge, and we may be talking about two different incidents. Yeah, I think maybe two different things. Tell me which one you think she took on herself. About the alleged refusal to follow Junior's orders and instead follow the orders of the judges, saying that she is an employee of the judges and not the employee of the CEO, and therefore she didn't have to follow Ms. Junior's orders. So that was the first issue that came up. Counsel, I want to follow up on this line of questioning with a different point. You're making arguments for why the four reasons given in the termination letter were not correct, but the analysis that we have to apply in a pretext situation is that the person who gave those reasons knew they were not correct, knew that they were relying on, or knew that they were asserting false reasons for taking the action that they took, and I don't hear anything that you're saying suggesting evidence that Judge Averell or the Executive Committee had reason to know that the explanations they gave for the action that they took were false. What evidence do you have of that? Well, I think the the law doesn't say they have to have actual knowledge, but the fact that the reasons provided circumstantial evidence, but what is the evidence that you would rely on to show that these decision makers had a reason, knew or had a reason to know that the reasons they were giving were were false? Well, I think the role is not just knowledge, but the fact that these reasons were basically wrong, and there's clearly evidence of that because this is... So is your position that they were so wrong it would have been obvious? Right. I mean, we had, I mean, she was accused of mismanagement based on items that were done by the attorney for the Superior Court. The email itself was written by the attorney for the Superior Court, so how could she be punished for that? And then there are issues clearly new... Well, but the email... The misrepresentation was clearly an issue between... Counselor, the email was written based on information that Ms. Junior was providing to the lawyer. Is that correct? Well, it was an issue regarding a merit pay raise. I know, but it was all coming from Ms. Junior, so the email is taking everything that Ms. Junior is saying as true and then drafting that email. Is that correct? No, it was simply the fact that the reason why the issue of the merit pay increase cannot be determined at this time was because of the pending investigation regarding the first complaint. So that was all the issue was there, but they found that that itself was a retaliation claim. Didn't there... Weren't there two investigations? Right. The first investigation regarded her complaint at the... Well, Margaret Smith's complaint that she was being retaliated against because Ms. Junior, following the advice of the attorney, talked to Ms. Smith about whether there could be an amicable separation from employment. That was an advice that the attorney for the Superior Court told her to do, and she just simply followed that advice. Well, there were four investigations. Right. The other investigations were regarding Ms. Junior's claims of discrimination. Right. And there was other issues regarding those. Well, there was the hostile work environment investigation. And that relates to the claims of retaliation in this case, and this court clearly was wrong on the retaliation. But let's let's look at that. Because that's the one I was asking you about, the hostile work environment investigation. That was the basis of the first reason, I believe, in the termination letter. And it found that Junior, Ms. Junior, regularly engaged in behavior reasonably viewed as upsetting, abrasive, intimidating, and insulting, and pressured Smith to leave her employment in significant part because she filed a complaint. Yes. Okay, that's that's the first reason. There was also a racial bias investigation. And I think that was based on the comment that Ms. Junior made to Judge DeMeo. Is that correct? Correct. All right. And then there was the retaliation investigation. Is that correct? Correct. All right. And that's based on the Smith action. Is that right? The two complaints by Smith. Yes. And then there's the misrepresentation investigation based on the allegation or the premise that Ms. Junior had misrepresented information to Judge Averill. Is that correct? Right, regarding what the Director of Family Law Division, Mr. Williams, told her regarding the reasons for one of the IT directors resignation. And all she did was relay that information. And it's my understanding, but I wanted to give you an opportunity to clarify this for me. If any one of those has a basis that we can accept under the law, doesn't the defendants or the appellees here then win? Well, I think we have to address each of those items. I agree. The reasons for termination. We have to show that they are a pretext. But we have to be given that opportunity in front of the trier of fact, in this case a jury, and not be determined by summary judgment motion when there is evidence that these issues may be a pretext for her termination. Okay. Do you want to reserve the balance of your time? Yes, please. I would like to reserve the balance. Thank you. Good morning, Your Honors. Jeff Michalowski for the appellee, the Superior Court for the County of Sonoma. This is a case involving credible concerns about bullying, retaliation, and dishonesty by the Court Executive Officer of Sonoma County Superior Court, which were validated by three separate investigations. After reviewing the reports of those investigations, which are in the record, 100 pages of material, half a dozen interviews with Ms. Junior, the presiding judge reviewed those investigations and decided to move to termination with the concurrence of all the four other judges on the Court's Executive Committee. So on that point, following up on the question I was asking your opposing counsel, which, who's the decision-maker? Is it the committee or is it just the one judge? The decision, Judge Averill made a decision and recommendation. So she had the authority to make the decision, and this is undisputed from her declaration, paragraph 20. She made the decision, then she ran it by the committee. The committee also concurred in that. Decisions are sometimes complex like that, to identify a singular decision-maker. I'm asking because on the pretext analysis, if we have to figure out, I think that analysis is governed by what did the decision-maker know about the reasons that they were giving? And that depends on, am I looking at just what Judge Averill knew and believed about those reasons, or am I looking at the whole Executive Committee? I think you could be guided by plaintiff's contentions in this case and in the briefs, which is that Judge Averill was the sole decision-maker, so we need not look to the others. However, if we do look to the others, there's no evidence presented or argument even that they engaged in discrimination or retaliation. Well, but there is LaForge, who was on the Executive Committee, who apparently, you know, there's a claim that there was, that violated her ability, or one of the claims by Ms. Junior is that because she reported him for an earlier incident, he should have never been allowed to be on that decision-making. Well, if you look to the undisputed testimony there as well, we do have the deposition testimony of Mr. LaForge, I'm sorry, Judge LaForge. Judge LaForge said he had no idea that Junior was involved in this process. He knew that she forwarded an email to Presiding Judge DiMaggio that said, listen to this. But that's not protected conduct. It's forwarding information. It's not a complaint of anything unlawful. That's not something that would trigger retaliation protections vis-a-vis Judge LaForge. Well, the plaintiff argues that that would be a question of fact for the jury to look at and consider whether Judge LaForge is credible on that point or not. Why isn't that correct? Well, because we have only one source of information. It's his testimony. Plaintiff had full and fair opportunity for discovery to create that triable issue of fact, to undermine his credibility, to present contrary testimony, and he didn't do that. We don't even have any indication of knowledge by Judge LaForge of a complaint related to the recording incident. So that without that knowledge, we certainly can't get to the causation, which is going to be one of the elements of the case. But even though she claims he must have known, do we look at that in the light most favorable to the plaintiff? We look at the evidence in the light most favorable to the plaintiff, not just their contentions or conclusions, right? So what evidence do they present that Judge LaForge was acting based on this earlier complaint? There's nothing, there's not even any, you know, foundational evidence of him having knowledge of Junior being involved in that complaint. I wanted to ask you some questions about the investigation and the quality of the investigations or that went on here. The cases that you rely on supporting the adequacy of investigation here involve different claims. Silva and King both considered allegations in the context of the standard for good cause and termination decisions, and I'm trying to figure out why we should consider those cases here in the context of a discrimination claim. In the context of the discrimination claim, the focus needs to be on the decision-maker's state of mind, right? And so when they're relying on that investigation report, do they have any information that would cause them to doubt it? So when we look at the way that courts assess whether an investigation is adequate or not, they've provided some indicia of a good investigation, some indicia of a bad investigation. These are all aligned here with this being a good investigation where a presiding judge reviewing it would have every reason to reasonably rely on it. It interviewed all the witnesses. It provided fair notice to the accused of the concerns that were raised against her. It gave her... But, I'm sorry, weren't there some complaints by other employees about how the investigation was done besides Ms. Junior? I want to make sure... Weren't there some complaints about how the investigation was done by the law firm, by people other than Ms. Junior? There was a concern raised by Quacey Williams, who was one of the division heads, not a judge, but in an administrative role, and what he said was that he was concerned that the investigative... two concerns about the investigation. Number one, that the questions were posed in a way that implicated a, quote, angry black woman stereotype. That's not a fair characterization of the investigation because the investigation was looking into concerns raised by Ms. Smith that were corroborated by six other... five other witnesses indicating that Ms. Junior had raised her voice. Was Mr. Williams' concern given to the chief judge? About the investigation? Judge Averill was in that conversation, and what she did was she relied on... so Mr. Quacey Williams' other concern was that the concerns that were raised by Margaret Smith were essentially being accepted without vetting, was the language he used. That concern was invalid because the investigation was designed to vet those concerns. It did vet them. It found some of them substantiated, and it found some of them not substantiated. It was a very measured investigation. Because, um, based on my review of the records, it seems like Mr. Williams made Judge Averill aware of his concerns about the investigator asking, in his view, racially biased lines of questioning, and I didn't see, but I wanted to ask, how did she respond to that? I don't think there's evidence in the record of a... At deposition, Mr. Williams says that she didn't respond directly to that. How did she act in response to that, however? She let the investigation run its course. She conducted an additional investigation in response to Junior's concerns. Right, but she used the same firm, the same investigator, I believe, and so I'm just wondering, does that create enough for a reasonable juror to conclude that Judge Averill knew that the investigation might be biased and didn't do, I mean, and that was her action sufficient? She did not use the same investigator to address Junior's complaint of race discrimination. So the first investigation was done by the Makus firm, or the gentleman's name was Makus, from the Maddox firm. Second investigation into retaliation was also done by that same firm. The third investigation into Junior's concerns of race discrimination was done by Margaret Bell of the Lagoste Bell firm. They used a separate investigator because it was concerns about, that were related to the original investigation. At that point, the accused, Judge DeMeo, was walled off and they let that investigation run its course and it went back to Presiding Judge Averill to consider. So she received all four of those investigation reports. Some of the concerns were validated. Many of the significant concerns were invalidated, including the abrasiveness, the humiliating of other employees, the insulting of them, the fact of retaliation and dishonesty. These were all validated. The concerns of race discrimination that were raised by Junior, which were assessed by a separate firm, were not validated. And at that point, only at that point, after these four investigation reports, 100 pages of material, it was at that point that Judge Averill made her decision to rely on those reports. We do have plenty of law that talks about sufficiency of investigations because investigations can always be second-guessed after the fact. It's very easy to say that you should have interviewed this witness, you should have interviewed that witness, you should have altered the sequence, ask this question, not ask that question. An investigation can always be critiqued after the fact. But the question is, at the time the decision-maker reviews that investigation, are they relying on it in good faith? When you read this investigation on its face, is there any indication from the investigation that would give the decision-maker pause to think about, this is not a good investigation. The investigator is trying to pull a fast one on me. And if you look at these investigations, which I'm sure you have, these are gold-standard investigations. They're in the record at 2 S.E.R. 263, 294, 328, and 357. Judge Averill testified in her declaration, paragraph 21, that when she reviewed these, there were, she thought about whether this was something that she could act upon. And she found the investigation thorough, credible, measured, balanced. It felt to her that it was something that was sufficient for her to act on. So if plaintiff had evidence that that was a bad faith explanation, and she was lying about that, that would be sufficient to create a pretext. But plaintiff hasn't made that argument, Your Honor. Yeah, I want to, before time gets to the whistleblower, the California Labor Code, section 1102.5 issue or claim. Your briefing suggests that the legal standard is the same for FEHA and California Labor Code, section 1102.5. Is that correct? Because I thought, I came across a case, California Supreme Court, from the California Supreme Court, that said we do not use the McDonnell-Douglas burden-shifting framework to claims under the 1102.5. That under the statutory framework, Junior must only establish that retaliation was a contributing factor to the determination. And so I wanted to give you an opportunity to address that. Your Honor is correct. The standard is a contributing factor under 1102.5, which is a lower standard than the substantial motivating factor in FEHA. But the problem for plaintiff here is it's not, we don't need to get to these fine points about the the quantum of causation here, because there's just no evidence of causation. There's no evidence that the reason was pretextual and that Judge Averill stated reason that she was relying on these investigation reports that made these factual findings, that that was a lie. That's what plaintiff has to prove, is that she was lying about that and was relying on something else. Well, she has to prove that ultimately, a jury, at this point, we're trying to figure out what does she have to show? How much does she have to show? You know, based on the circumstantial evidence here that she's relying on for this to survive summary judgment. When we have to look at the evidence and the light most favorable to her, but also I acknowledge the honest belief of the decision maker. And we also have law that says that plaintiff here would have to provide specific and substantial reasons. I'm trying to reconcile all of our law here and figure out exactly what is, is there enough here based on the law that we have in our circuit that she should be allowed to go forward with a jury trial. I think the key piece of this is that to survive summary judgment, the plaintiff would need to come forward to present a genuine issue of material fact based on evidence, right? It's not based on a theory or a conclusion or conjecture. It has to be based on competent evidence. We learn from the Coughlin case from 2005 that the quantum of evidence in a circumstantial case is the substantial and specific and substantial standard that Your Honor referenced. So it's not just that they need to come forward with evidence. That evidence needs to be specific and substantial and the problem for plaintiff here is that there is no evidence that Judge Averill acted based on anything other than those four investigation reports that hit her desk and validated these very serious concerns about bullying and dishonesty by a court executive. Do Your Honors have any additional questions? I see my time is running short. I'll submit on on that. Thank you. Thank you. Your Honor, I just want to point out number one is the discrimination laws apply both to explicit discrimination as well as implicit discrimination. And as an attorney here in California, we've all been doing MCLEs, you know, teaching us what's the difference between explicit and implicit and that even though there may be an honest belief doesn't mean there is not implicit discrimination. And we have the evidence, our expert opinion regarding the fact that implicit bias was not even addressed in the investigations. So that is evidence. Again, what the court, district court did here was ignore all the evidence that the plaintiff presented. This is a summary judgment rule and the rule regarding summary judgment is there only needs to be little evidence presented. And number two regarding the retaliation, the district court totally ignored all the evidence that was presented showing the nexus between the retaliation and and the knowledge of the retaliator. I mean Judge Advil clearly knew that Ms. Junior had reported a claim of discrimination. That was in the evidence on December 17th in a meeting. They discussed it. She clearly has suspicion that Ms. Junior was involved in the LaForge investigation because she had a conversation with Ms. Junior regarding that issue. So there was clearly evidence there showing that connection yet the court dismissed all that evidence. So that's why summary judgment here is just inappropriate. I agree with you. Those are issues that could be resolved. Those are the standards that need to be resolved, but they should be before a jury to make those fact-finding. And so here we have instead of the evidence being viewed in favor, most favorable to the non-moving party, it was instead the evidence was viewed in favor of the complaining party. So that's why there's the District Court's decision was inappropriate. It should be overruled and this matter should be referred back to the trial court for a jury trial. Thank you very much, Mr. Advil. We appreciate your oral argument presentation, Mr. Michalowski. Also appreciate your oral argument presentation here today. The case of Junior v. Sonoma County Superior Court is submitted.
judges: MURGUIA, FORREST, Collins